STATE *v.* ARTHUR BOSWORTH.

February Term, 1912.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, and POWERS, JJ.

Opinion filed May 22, 1912.

*Jury — Empaneling — Summoning   Talesmen — Discretion   of Court—Statutes—Construction—P. S. 1480, 1481—Homicide—Punishment—Discretion of Jury—Instructions.*

The trial court has a large discretion in empaneling a jury, and its exercise thereof will not be reviewed unless it appears that the exceptor has been prejudiced.

Changes made in the revision of the statutes will not be regarded as altering the law when it was well settled by plain language in the statute, unless it is clear that such was the intention.

When a murder case was called for trial there remained only sixteen undischarged jurors of the regular panel, and there were also in attendance twenty men summoned by the sheriff by postal card, pursuant to the direction of the court that he summon a sufficient number of judicious men to act as talesmen and fill the panel, six of whom sat in the trial of the case, having been called after the regular panel was exhausted. *Held* that the court did not abuse

its discretion in summoning the jurors as stated, and that the provisions of P. S. 1480, 1481 did not confine the court to a regular drawing of jurors in the circumstances.

P. S. 5695, as amended by No. 225, Acts 1910, providing that punishment for murder in the first degree shall be death or imprisonment in the state's prison for life, "as the jury may determine," does not divide murder in the first degree into grades, but leaves it for the jury to determine the penalty, in the untrammeled exercise of a just and wise discretion, without any instructions as to the doctrine of reasonable doubt, presumptions, etc.

INDICTMENT for murder. Plea, not guilty. Trial by jury at the September Term, 1911, Chittenden County, *Hall*, J., presiding. Verdict, "guilty of murder in the first degree, with capital punishment." The respondent excepted. The opinion states the case.

*Alfred L. Sherman* and *Sherman R. Moulton* for the respondent.

*John G. Sargent*, Attorney General, and *Henry B. Shaw*, State's Attorney, for the State.

· MUNSON, J.    Section 5695 of the Public Statutes, as amended by No. 225 of the Acts of 1910, provides that "the punishment of murder in the first degree shall be death or imprisonment for life in state's prison as the jury may determine." A verdict of murder in the first degree with capital punishment has been found against the respondent. He claims error in that he was tried by a jury not lawfully empaneled, and not properly instructed as to its duty regarding the penalty.

When the case was called there remained undischarged of the regular panel of jurors sixteen men; the remainder having been discharged some time before, when the court supposed that the case would not be tried. There were also in attendance twenty men who had been summoned by the sheriff in compliance with the court's direction, given when it found that the case would be tried, that he summon a sufficient number of judicious men to act as talesmen and fill the panel. After the regular panel had been exhausted, several of the men so summoned were called into the box by the sheriff when directed by the court to

call a talesman, six of whom sat in the case. All these stated on *voir dire* that they had been summoned by a postal card received from the sheriff three or four days before, to appear as talesman on a day named, which was the day the case came on for trial. The respondent did not exhaust his peremptory challenges.

Section 1480 of the Public Statutes provides that "if at any time there is not a sufficient number of jurors in attendance to fill the panel for the trial of a cause, the court may order the sheriff or other officer to summon, with or without process, a sufficient number of judicious men of the county to fill such panel." The next section provides that "a county court, during the term, may order an additional number of petit jurors to be summoned to attend the court at such time as it directs." The respondent contends that if the court thought it necessary, four or five days before the trial, to bring in other jurors, it should have acted under the last section, and thus have given him the benefit of a jury drawn from men who had been selected for jury service in the regular manner.

The respondent does not directly question the doctrine which has always been recognized in this State, that the trial court has a large discretion in empaneling a jury, and that its proceedings will not be revised unless it appears that the excepting party has been prejudiced, or that some requirement of the statute has been disregarded. *Quinn* v. *Halbert*, 57 Vt. 178; *State* v. *Ward*, 60 Vt. 142, 156, 14 Atl. 187. An application of this rule to the case presented will defeat the respondent's claim, unless the statutory provisions above quoted are held to confine the court to a regular drawing whenever the circumstances are such that this method is available.

There is nothing in the language of the provisions as they exist in our present statutes that requires this construction. Nor was there in the language of these provisions as originally enacted. Laws 1779, p. 65, (R. 1787, p. 82) R. 1797, pp. 105, 106, §§63, 64. Nor can it be said that this construction is required to bring the provisions into harmony with the main purpose of the law. This argument is precluded by the terms of the statute of 1797, which is now the second of the sections above quoted. It was at first expressly provided that the summoning of additional jurors during the term should be at the discretion of the court, and this language was preserved until the revision

of 1839. In other words, it was still within the discretion of the court to finish the term relying on talesmen, instead of bringing in additional jurors by a new venire. The omission in the revisions of the words which expressly left the new procedure discretionary is not to be taken as altering the law. *Brighton* v. *Kelsey,* 77 Vt. 258, 59 Atl. 833. The same result has been reached in another state on provisions similar to our present statute. *State* v. *Allen,* 47 Conn. 121.

The respondent asked the court to instruct the jury that they could not add to their verdict the words ''with capital punishment'' unless they were satisfied beyond all reasonable doubt upon all the evidence in the case that that was the only proper punishment for him, and that in so satisfying themselves they should take into consideration the mental capacity of the respondent as shown by the evidence introduced. The court charged the jury that in determining whether the verdict should be with capital punishment they should weigh all the evidence bearing upon that point and all the evidence and circumstances in the case, and proceeded as follows: ''Is this a case where leniency should be shown, or did the act, if committed, show such an abandoned and malignant heart that you are satisfied beyond a reasonable doubt that in the discharge of your duty, and under your oath, you should add the words, 'with capital punishment.' This is a matter which rests entirely with you; it is for you and you alone to determine.'' The respondent excepted to the failure to comply with his request.

At the close of the charge the respondent requested the court to charge further that if a verdict of murder in the first degree should be found there would be a presumption in favor of the lesser punishment until that presumption was overcome by the evidence in the case. The court declined to add this to the charge, and the respondent excepted to its failure to do so.

It is argued for the respondent that the effect of the provision regarding the penalty is to divide murder of the first degree into two grades, one meriting life imprisonment and the other death; that such a provision necessarily contemplates some distinction by which the classification may be determined; that an important consideration must be the degree of mental capacity possessed by the respondent above that which is sufficient to subject him to criminal liability; and that when there is evidence of mental inferiority the jury should be instructed upon this

point, and told that they should not return a verdict of death unless they were satisfied beyond all reasonable doubt that that was the only penalty adequate to the case.

It is not necessary to consider the exact phraseology of the first request, nor to inquire whether the charge was a substantial compliance with it. The case can be and should be disposed of on broader ground. We think the respondent's argument, in its bearing upon both requests, misconceives the force of the amendatory enactment. It was not the purpose of the Legislature to create subdivisions of the crime of murder in the first degree, to be ascertained by drawing some line of legal demarcation, and make this classification determinative of the penalty. It was left for the jury to choose the penalty for the case before them in the untrammeled exercise of a just and wise discretion. They are to be governed therein by such considerations as appeal to their own judgment and discretion upon a review of the whole case. The court is not entitled to limit them in the exercise of this discretion by instructions in any form. A duty which the law ordinarily imposes upon the court is in this instance assigned to the jury, and their rights therein are to be determined with reference to the nature of this special service, and not by the rules applicable to the ordinary functions of the jury. The doctrine of reasonable doubt, and the doctrine regarding presumptions, as legal rules, have no application to this branch of their duty. So the respondent was not entitled to a compliance with his requests.

*Judgment that there is no error in the proceedings and that the respondent take nothing by his exceptions.*